OPINION
 

 Per Curiam:
 

 SUMMARY
 

 This case involves Raymond Paul Paschall’s two convictions for driving under the influence (“DUI”), which were enhanced from misdemeanors to felonies through the introduction of two prior misdemeanor convictions. Prior to trial, Paschall raised numerous arguments in an effort to invalidate the prior convictions, all of which the district court rejected. Now on appeal, Paschall argues that: (1) the earlier justice courts did not have jurisdiction to suspend Paschall’s sentences in the prior convictions; and (2) one of the convictions was prosecuted under a county DUI ordinance that had not been approved by the board of directors (the ‘ ‘board’ ’) of the Nevada Department of Transportation (“NDOT”), as required by statute. We conclude that the prior convictions were valid because: (1) justice courts properly have the power to suspend the sentences of misdemeanor defendants under the current statutory scheme; and (2) the county DUI ordinance under which Paschall was earlier convicted did not require approval of NDOT’s board prior to enactment.
 

 STATEMENT OF FACTS
 

 In 1997 and 1998, Paschall received two DUI citations. Because Paschall had two prior DUI convictions within seven years, the 1997 and 1998 charges were enhanced to felonies under NRS 484.3792(l)(c),
 
 [1]
 
 and Paschall was bound over for a joint
 
 *913
 
 bench trial at the district court. Paschall’s prior convictions both resulted in suspended sentences imposed by the justice courts. Paschall moved under several different theories to have the prior convictions invalidated in an effort to avoid the effects of the enhancement statute. However, all of his motions were denied, and the case proceeded to trial where Paschall was found guilty of both felony charges. This appeal followed.
 

 DISCUSSION
 

 Whether the justice courts exceeded their jurisdiction by suspending Paschall’s sentences in his two prior convictions
 

 Paschall asserts that the two prior convictions are invalid and cannot be used for enhancement purposes because the justice courts presiding over his earlier proceedings unconstitutionally exceeded their jurisdiction by suspending his jail sentences.
 
 [2]
 
 Specifically, Paschall asserts that the Nevada Constitution expressly limits the authority to suspend sentences in criminal cases to district courts, thereby depriving the legislature of the power to grant inferior courts, such as justice and municipal courts, authority to suspend. Consequently, Paschall’s argument squarely challenges the constitutionality of NRS 4.373, the Nevada statute granting such suspension power to the justice courts.
 
 [3]
 

 Preliminarily, we conclude that Paschall’s prior convictions are valid regardless of whether the justice courts exceeded their jurisdiction by suspending the sentences because “[t]he failure to properly sentence does not render the trial and proceedings a nullity.” State v. District Court, 85 Nev. 485, 488, 457 P.2d 217, 219 (1969). However, because the constitutionality of NRS 4.373 is one of first impression, we shall discuss it below.
 

 
 *914
 
 In matters concerning a statute’s constitutionality, we have held that “ ‘statutes are presumed to be valid, and the burden is on the challenger to make a clear showing of their unconstitutionality.’ ” Sereika v. State, 114 Nev. 142, 145, 955 P.2d 175, 177 (1998) (quoting Childs v. State, 107 Nev. 584, 587, 816 P.2d 1079, 1081 (1991)). Further, “‘statutes should be construed, if reasonably possible, so as to be in harmony with the Constitution.’ ”
 
 Id.
 
 (quoting State of Nevada v. Glusman, 98 Nev. 412, 419, 651 P.2d 639, 644 (1982)). Finally, it is axiomatic that ‘““[w]here the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself.” ’ ” Erwin v. State of Nevada, 111 Nev. 1535, 1538-39, 908 P2d 1367, 1369 (1995) (quoting Charlie Brown Constr. Co. v. Boulder City, 106 Nev. 497, 503, 797 P.2d 946, 949 (1990) (quoting State v. Jepsen, 46 Nev. 193, 196, 209 P. 501, 502 (1922))).
 

 With respect to the jurisdiction of justice courts, this court has recognized the well-established principle that
 

 courts of justices of the peace are of special and limited jurisdiction. They can take nothing by intendment or implication. They are creatures of the statute, and as they proceed they must move step by step with its requirements, or their acts will be void.
 

 Paul v. Armstrong, 1 Nev. 82, 99-100 (1865). However, the legislature’s power to define a justice court’s jurisdiction is not absolute because “the legislature has no power to enlarge the jurisdiction of any court beyond that expressed in the Constitution.” Moore v. Orr, 30 Nev. 458, 462, 98 P. 398, 399 (1908). Therefore, our inquiry focuses on the Nevada Constitution and its provisions regarding justice courts.
 

 As amended in 1978, article 6, section 8 of the Nevada Constitution states:
 

 The Legislature shall determine the number of Justices of the Peace . . . and shall fix by law their qualifications, their terms of office and the limits of their civil and criminal jurisdiction, according to the amount in controversy, the nature of the case, the penalty provided, or any combination of these.
 

 Nev. Const. art. 6, § 8. The plain language of this provision mandates that the legislature establish “by law,” and according to the
 
 *915
 
 “nature of the case,” the “limits of [a justice court’s] civil and criminal jurisdiction.”
 
 Id.
 
 Accordingly, we conclude that the legislature has the power to vest the justice courts with jurisdiction to suspend the sentences of misdemeanor defendants.
 

 Paschall, however, directs us to the somewhat contrary language contained in article 5, section 14 of the Nevada Constitution:
 

 3. The legislature is authorized to pass laws conferring upon the
 
 district courts
 
 authority to suspend the execution of sentences, fix the conditions for, and to grant probation ....
 

 Nev. Const. art. 5, § 14 (language ratified in 1950) (emphasis added). Because “district courts” alone are mentioned, Paschall argues that by negative implication the legislature has no authority to vest justice courts with the power to suspend sentences.
 
 See
 
 State of Nevada v. Hallock, 14 Nev. 202, 205-06 (1879) (“The affirmation of a distinct policy upon any specific point in a state constitution implies the negation of any power in the legislature to establish a different policy”). However, this view ignores the broad grant of power in article 6, section 8 of the Nevada Constitution and our duty to interpret statutes “in harmony with the Constitution” when reasonably possible.
 
 See Sereika,
 
 114 Nev. at 145, 955 P.2d at
 
 177.
 
 Accordingly, we conclude that that language of article 5, section 14 of the Nevada Constitution does not control the matter.
 
 [4]
 

 Having concluded that the Nevada Constitution gives the legislature authority to grant justice courts the power to suspend sentences, we hold that NRS 4.373, which grants such power to the justice courts, is constitutional. Therefore, the suspended sentences in Paschall’s prior convictions were properly entered by the justice courts presiding over those charges.
 

 Whether Paschall’s first prior conviction is invalid because the charged violation was not approved as required by NRS 484.779
 

 Paschall next argues that his first prior conviction is invalid because the DUI ordinance under which he was charged, Washoe
 
 *916
 
 County Code § 70.3865, had not been “approved by the board of directors of the department of transportation” as required by NRS 484.779.
 

 In general, a local authority’s ability to enact its own traffic ordinances is governed by NRS 484.777(2), which provides the following broad grant of power:
 

 Unless otherwise provided by specific statute, any local authority may enact by ordinance traffic regulations which cover the same subject matter as the various sections of this chapter if the provisions of the ordinance are not in conflict with this chapter.
 

 NRS 484.777(2).
 

 One such “specific statute” limiting NRS 484.777 is NRS 484.779. NRS 484.779(l)(a)-(e) includes a list of specific regulations that may be enacted under its provisions, including: (1) regulation of processions or assemblages; (2) defining one-way roads; (3) regulating intersections with highways; (4) designating truck and bicycle routes; and (5) “[a]dopting such other traffic regulations related to specific highways as are expressly authorized by this chapter.” NRS 484.779(1)(e). NRS 484.779(3) then states an important condition to the enactment of the regulations it permits:
 

 An ordinance enacted under this section
 
 is not effective with respect to:
 

 (a) Highways constructed and maintained by the department of transportation under the authority granted by chapter 408 of NRS;
 

 until the ordinance has been approved by the board of directors of the department of transportation.
 

 NRS 484.779(3) (emphasis added). Thus, Paschall contends that the county DUI ordinance under which he was earlier prosecuted falls within the purview of NRS 484.779, and thus required approval from the NDOT board prior to enactment. However, the plain language of NRS 484.779 limits board approval to those ordinances “enacted under this section” — namely, those ordinances listed in NRS 484.779(1)(a)-(e). These subsections deal generally with the use and flow of traffic on state highways or the regulation of a “specific” highway. The ordinance at issue here, however, is a generally applicable safety regulation unrelated to those enumerated in NRS 484.779(1)(a)-(e).
 
 See
 
 Washoe County
 
 *917
 
 Code § 70.3865. Accordingly, we conclude that the county DUI ordinance is not an ordinance “enacted under” NRS 484.779, and thus board approval is not required.
 
 [5]
 

 Therefore, we conclude that Paschall’s first prior conviction was valid and not entered upon an improperly enacted county ordinance.
 

 CONCLUSION
 

 We first conclude that NRS 4.373, which authorizes justice courts to suspend sentences, is constitutional. Next, we conclude that a local authority’s generally applicable DUI ordinance does not require NDOT board approval prior to its valid enactment. Therefore, the prior DUI convictions introduced against Paschall were valid and properly considered by the district court for enhancement purposes.
 
 [6]
 

 Accordingly, we affirm the district court’s judgment.
 

 [1]
 

 NRS 484.3792(l)(c) provides that:
 

 [A person who drives under the influence for] a third or subsequent offense within 7 years, is guilty of a category B felony and shall be punished by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 6 years, and shall be further punished by a fine of not less than $2,000 nor more than $5,000.
 

 [2]
 

 Preliminarily, the State argues that review of Paschall’s prior convictions should be limited in light of the United States Supreme Court’s decision in Custis v. United States, 511 U.S. 485 (1994). However, we decline this opportunity to adopt such a strict rule limiting collateral attacks and note that we are not bound by the
 
 Custis
 
 decision as it involved a federal sentencing law not at issue here and merely established the floor for federal constitutional purposes as to when collateral attacks of prior convictions may be prohibited.
 

 [3]
 

 NRS 4.373 provides, in relevant part, that “a justice of the peace may suspend, for not more than 1 year, the sentence of a person convicted of a misdemeanor,” and lists conditions that may be made a part of the suspension, such as participation in a treatment program. We note that NRS 5.055 provides similar powers to municipal judges and conclude that our analysis here would likely apply if the question of its constitutionality was before us.
 

 [4]
 

 We note that in 1976, voters defeated a proposed constitutional amendment to article 5, section 14, that would have included “inferior courts”— i.e., justice and municipal courts — to the list of courts the legislature could authorize to suspend sentences. However, because we have concluded that article 5, section 14, does not control the inquiry, this fact is only of historical import.
 

 We also note that two opinions from the Attorney General — from 1966 and 1978 — concluded that justice courts did not have the authority to suspend sentences. However, we conclude that the opinions are distinguishable because
 
 *916
 
 there was no legislative grant of such power in the statutes in effect at the time the opinions were written. Moreover, attorney general opinions are not binding authority on this court.
 
 See
 
 Goldman v. Bryan, 106 Nev. 30, 42, 787 P.2d 372, 380 (1990).
 

 [5]
 

 We
 
 note that a 1983 Attorney General’s opinion considered an issue nearly identical to the one here and arrived at the same conclusion.
 
 See
 
 83-12 Op. Att’y Gen. 43 (1983).
 

 [6]
 

 In addition to the issues discussed above, Paschall raises numerous other arguments on appeal, including: (1) that the prior convictions are invalid for alleged
 
 Faretta
 
 violations; (2) that his first prior conviction shows a jurisdictional violation on its face because the “State of Nevada” prosecuted the Washoe County DUI violation rather than the “County of Washoe”; (3) that the waiver form for the second prior conviction is invalid because it shows that Paschall did not waive three of his constitutional rights; (4) that the complaint used to evidence his second prior conviction is invalid because it is a “misdemeanor” complaint that contains an impermissible felony charge and was not in the form of a formal complaint; (5) that because the citation for his second prior conviction does not include all the elements of the offense and does not reference the first prior conviction, the subsequent conviction for second offense DUI is invalid because the State was allowed to proceed on an uncharged theory; (6) that the misdemeanor judgments for his priors, which included a jail term and were entered by a lay judge, violated United States Supreme Court precedent, and are thus void for enhancement purposes; (7) that because his priors imposed an administrative assessment, which funds are in part controlled directly by the courts, the judgment is void because the judge was no longer a neutral and detached magistrate; (8) that his first felony complaint from 1997 is defective because it refers to a conviction for his second prior conviction occurring on “January 8, 1997,” the day of his plea, rather than the later sentencing date; (9) that blood alcohol evidence should have been suppressed regarding his October 6, 1997, charge because he was not allowed to make a phone call within a three-hour time period; and (10) that because the arrests for the later DUIs occurred in Empire on private streets, the State had to prove that Paschall was driving on the “state highway” before Paschall could be convicted. Having reviewed all of Paschall’s arguments, we conclude that they lack merit.